PITTMAN, Justice,
dissenting:
I respectfully dissent to the majority’s opinion based upon the failure of the Chancellor to make adequate findings and also because the Chancellor failed to decide all issues before him.
In the judgment dated May 14, 1992, the Chancellor did not explain the basis for his $125.00 per month award of alimony. In the absence of such explanation or on-the-record findings by the Chancellor, the $125.00 per month award comes close to being grossly inadequate. There is no indication that the Chancellor took into account the fact that it was certain that Sue’s income was scheduled to decrease from $829.00 to $515.00 (37.-87696% reduction in income) in May 1993. This was known at the time of trial. Sue estimated and Jimmy stipulated that her monthly expenses amounted to $939.00 per month. As long as Sue’s monthly income was $829.00, then the $125.00 award would allow Sue to meet her monthly expenses with a small surplus. However, in May 1993 Sue’s monthly income dropped to $515.00. After May 1993 Sue would have a shortfall of $424.00 between her income and expenses. I *815 would reverse and remand for further findings on the record concerning the basis of the alimony award. Specifically, the Chancellor should state the sources of Sue’s income which he considered in determining the proper alimony award, and the relevance of Sue’s other resources to this amount. ■ The court should consider an increase in the alimony award.
There are several other questions left unanswered by the record. These issues have some bearing on the proper alimony award, and should also be addressed on remand. First, there is the apparently unsettled matter of Sue’s retirement account. At the hearing, Sue testified that Jimmy was drawing $64.00 per month from her retirement fund, and that the designation of Jimmy as beneficiary was irrevocable. Further, Jimmy testified that if Sue predeceased him that he would draw $512.00 per month. The Chancellor’s judgment of May 14, 1992, ordered that Jimmy’s name be removed from Sue’s retirement benefits, and that Jimmy should take nothing from Sue’s retirement benefits should she predecease him. However, in Sue’s brief, she alleged that Jimmy continued to draw $64.00 per month from her retirement benefits, and that he would draw the $512.00 per month after her death. If this is true, then Jimmy is actually paying only $61.00 per month alimony. This is grossly inadequate and shocks the conscience.
The record contains no appropriate evidence, such as copies of Sue’s retirement policy, or a notice of cancellation of Jimmy as beneficiary; therefore, this Court cannot know the status of Sue’s policy. This matter should be addressed on remand, with proper evidence of cancellation of Jimmy as beneficiary admitted into the record.
Second, it is unclear from the record where Sue is residing, and whether she has any expenses, such as rent or mortgage payments, associated with her residence. The Chancellor’s order stated that the house and farm should be sold, with proceeds divided evenly between Jimmy and Sue. The Order farther provided that Sue would remain in the house until it was sold. However, it is unclear exactly what has been done with the house and the farm. It appears that Jimmy now owns the house and perhaps the farm. Jimmy stated in his brief that he purchased Sue’s share in the marital home for $66,-100.00. It also appears, however, that Sue still resides in the house, although she stated that she had no permanent residence to call her own. The record contains no bill of sale or other financial documents related to the house. Presumably, Sue can, and perhaps by now has, purchased another residence with her proceeds from the house. On remand, findings should be entered concerning the disposition of the marital house and farm, accompanied by proper documentary evidence.
Finally, the Chancellor’s order did not make any findings concerning the couple’s 1990 and 1991 state tax refunds. According to Sue’s testimony, she possessed checks for the 1990 refund which totaled approximately $750.00, because the checks had been awarded to her in the original court order. However, it is unclear how the Chancellor’s order of November 25, 1991, which set aside the settlement agreement and judgment, affected the status of these checks. The couple’s relationship with the Tax Commission became somewhat complicated. On remand, findings should be entered concerning the 1990 refund, and the many problems that obviously surround it.
A Chancellor should clearly decide all issues before the court. Also a judge should not conduct hearings off the record, because it leaves this Court in the dark. Based upon the foregoing reasons, I respectfully dissent.
BANKS, J., joins this opinion.